**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

AHMED SARDAR,                         :
                                      :    Civil Action No. 06-927 (FLW)
            Plaintiff,                :
                                      :
            v.                        :    **OPINION**
                                      :
DEPARTMENT OF CORRECTIONS,            :
et al.,                               :
                                      :
            Defendants.               :

**APPEARANCES:**

        AHMED SARDAR, Plaintiff <u>pro se</u>
        #441591D/529962
        Southern State Correctional Facility
        P.O. Box 150
        Delmont, New Jersey 08314

**WOLFSON**, District Judge

        Plaintiff Ahmed Sardar ("Sardar"), a state prisoner
currently confined at the Southern State Correctional Facility in
Delmont, New Jersey, seeks to bring this action <u>in forma</u>
<u>pauperis</u>.  Based on Sardar's affidavit of indigence and his
prison account statements, it appears that he is qualified to
proceed as an indigent.  Therefore, the Court will grant the
application to proceed <u>in forma pauperis</u> and direct the Clerk of
the Court to file the petition without pre-payment of the filing
fee.

        Having reviewed the petition to identify cognizable claims
pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court

concludes that the Complaint should be dismissed for failure to state a claim.

## I.   BACKGROUND

Sardar brings this civil action under 42 U.S.C. § 1983, seeking injunctive relief directing the defendants to lift his "de facto" detainer and grant plaintiff a de novo classification hearing for reduced custody status.  The named defendants are: the New Jersey Department of Corrections ("NJDOC"), and the Southern State Correctional Facility ("SSCF") Classification Committee.  The following factual allegations are taken from the petition and are accepted as true for purposes of this review.

Sardar alleges that, on July 22, 2005, the Immigration and Customs Enforcement ("ICE") of the U.S. Department of Homeland Security ("DHS") filed a "letter of interest" with the NJDOC with respect to plaintiff.  The letter expressly states that it is not a "detainer";[1] however, the NJDOC and the SSCF Classification Committee have treated the letter of interest as a detainer and

---

[1] An ICE detainer:

serves to advise another law enforcement agency that the [Immigration and Naturalization] Service seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien.  The detainer is a request that such agency advise the Service, prior to release of the alien, in order for the Service to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible.

8 C.F.R. § 287.7(a).

2

basis for denying plaintiff a reduced custody status to earn reduced custody status credits.  The letter states that Sardar "is currently under investigation as a criminal alien and may receive an immigration detainer in the future as DHS processes according to release date."

Sardar asserts that the defendants' actions in this regard violate his Fourteenth Amendment rights to due process and equal protection.  Sardar further alleges that other inmates with restrictions that prevent them from receiving full minimum custody status are still able to acquire gang minimum custody status and earn reduced custody status credits.

Sardar had filed an administrative grievance, which the NJDOC subsequently denied.  The NJDOC had responded that non-permissible detainers, such as in plaintiff's case, are detainers that preclude an inmate from being assigned to reduced custody status pursuant to N.J.A.C. 10A:9-4.6.  Thus, as a matter of policy and regulation, the NJDOC continues to treat the ICE letter of interest as a non-permissible detainer pending receipt of an actual detainer and plaintiff will not be assigned to reduced custody status.

Sardar seeks injunctive relief only; he does not seek monetary damages.[2]

---

[2]  Sardar recently informed this Court that he has consented to a voluntary deportation with respect to his immigration proceedings currently pending.  Sardar has requested voluntary

II.  STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint or petition in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

In determining the sufficiency of a pro se action, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

---

deportation because he is allegedly eligible for release on
parole on or about June 19, 2006.  (Document Entry No. 2).

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981). However, where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading requirement that it contain short, plain statement of the claim but lacked sufficient detail to function as a guide to discovery was not required to be dismissed for failure to state a claim; district court should permit a curative amendment before dismissing a complaint, unless an amendment would be futile or inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir.

5

2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); <u>Urrutia v.</u>
<u>Harrisburg County Police Dept.</u>, 91 F.3d 451, 453 (3d Cir. 1996).

### III.   <u>SECTION 1983 ACTIONS</u>

Sardar brings this action pursuant to 42 U.S.C. § 1983
alleging violations of his civil rights guaranteed under the
United States Constitution.  Section 1983 provides in relevant
part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must
allege, first, the violation of a right secured by the
Constitution or laws of the United States and, second, that the
alleged deprivation was committed or caused by a person acting
under color of state law.  <u>West v. Atkins</u>, 487 U.S. 42, 48
(1988); <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255-56 (3d Cir.
1994).

### III.   <u>ANALYSIS</u>

Here, Sardar is seeking a Court Order directing the
defendants to lift the non-permissible detainer issued against
him, and grant plaintiff a de novo classification hearing for
reduced custody status.  He claims that the defendants' action in

6

using the ICE's letter of interest to deny plaintiff reduced
custody status violates his rights to due process and equal
protection under the Fourteenth Amendment.

A.  Due Process Claim

     A liberty interest protected by the Due Process Clause may
arise from either of two sources: the Due Process Clause itself
or enacted law.  See Kentucky Dep't of Corrections v. Thompson,
490 U.S. 454, 460 (1989); Asquith v. Department of Corrections,
186 F.3d 407, 409 (3d Cir. 1999).  Determining whether state law
or regulations create an expectancy of release, and thus, a
protected liberty interest, turns upon the language in the
statute or regulation.  Mandatory language may create a liberty
interest if it establishes a "particularized standard" that binds
a decision maker and, thereby, creates a legitimate expectation
of release.  Olim v. Wakinekona, 461 U.S. 238, 249 (1983).
However, "[i]f the decision maker is not required to base its
decision on objective and defined criteria, but instead can deny
the requested relief for any constitutionally permissible reason
or for no reason at all, the state has not created a
constitutionally protected liberty interest."  Id. (quoting
Connecticut Bd. Of pardons v. Dumschat, 452 U.S. 458, 466-67
(1981)).

     Further, as to convicted and sentenced prisoners, like
Sardar, "[a]s long as the conditions or degree of confinement to

which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." <u>Montanye</u> <u>v. Haymes</u>, 427 U.S. 236, 242 (1976).  <u>See also</u> <u>Sandin v. Connor</u>, 515 U.S. 472, 484-86 (1995)(holding that a liberty interest is implicated only where the action creates "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or creates a "major disruption in his environment").

   It is well established that an inmate does not possess a liberty interest arising from the Due Process Clause in assignment to a particular custody level or security classification or a place of confinement.  <u>See</u> <u>Wilkinson v.</u> <u>Austin</u>, 545 U.S. 209, 125 S.Ct. 2384, 2393 (2005)(the Constitution does not give rise to a liberty interest in avoiding transfers to more adverse conditions of confinement); <u>Olim v.</u> <u>Wakinekona</u>, 461 U.S. 238, 245 (1983); <u>Meachum v. Fano</u>, 427 U.S. 215, 224-25 (1976); <u>Montayne</u>, 427 U.S. at 243; <u>Moody v. Daggett</u>, 429 U.S. 78, 88 n.9 (1976).  Moreover, the custody placement or classification of state prisoners within the State prison system is among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." <u>Meachum</u>, 427 U.S. at 225.

Governments, however, may confer on inmates liberty interests that are protected by the Due Process Clause. "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

Here, New Jersey regulations provide specific eligibility criteria for reduced custody consideration, pursuant to N.J.A.C. 10A:9-4.6. Inmates must meet the specific criteria set forth in the regulation to be eligible for full minimum custody status. This regulation expressly excludes certain inmates from consideration for reduced custody status based on whether they have out-of-state, New Jersey, or federal open charges against them on enumerated crimes. See N.J.A.C. 10A:9-4.6(o), (p), ®, (s), (t). The regulation also excludes foreign born inmates from consideration for reduced custody status if the INS (now the ICE) has responded to referrals. See N.J.A.C. 10A:9-4.6(v). The regulation does not specifically require that alien inmates must have an actual detainer issued against them to exclude them from consideration for reduced custody status.

Thus, in this case, the decision to transfer an inmate to minimum custody status is committed to the sound discretion of

the defendants based upon the facts of the individual inmate's case. In general, the regulation gives defendants broad discretion, but there are certain circumstances that clearly limit this discretion in such a way that undermines any suggestion that a reduced custody status could reasonably be expected. Consequently, the language of this regulation does not create a reasonable expectation of entitlement to a reduced custody status sufficient to create a liberty interest. See Olim, 461 U.S. at 249; Franklin v. Barry, 909 F. Supp. 21, 29 (D.D.C. 1995). Further, denying reduced custody status because of the ICE's letter of interest as to a possible detainer would not be an "atypical and significant hardship" sufficient to call for protection by the Due Process Clause. Sandin, 515 U.S. at 484-86.

Here, Sardar has not alleged any facts to suggest that he may be entitled to a reduced custody status or security classification pursuant to state statutory or regulatory law. He does not allege that any statute confers a liberty interest in being free from the constraints imposed against inmates having detainers and letters of interest issued against them by the ICE, which affects their classification. Nor does Sardar allege that the conditions under which he is confined present "atypical and significant hardships." Thus, Sardar cannot establish any deprivation of his liberty interests under the Due Process

10

Clause.  Moreover, the defendants' discretion, pursuant to state prison policy and regulation, to treat plaintiff's ICE letter of interest as a non-permissible detainer pending receipt of an actual detainer and assign plaintiff to certain custody status accordingly, is reasonably related to the State's legitimate governmental interest in managing its prison and jail facilities and maintaining security and administrative order.[3]

B.  Equal protection Claim

Finally, the exclusion of persons subject to an INS[4] or ICE detainer does not violate the Equal Protection Clause, as asserted by Sardar.  Regulations such as that challenged here, N.J.A.C. 10A:9-4.6, classify prisoners as those who are subject to custodial considerations (including those who have detainers lodged against them) and those who are not, not on the basis of alienage.  See McLean v. Crabtree, 173 F.3d 1176, 1185-86 (9th

---

[3]  The Court notes that Sardar has requested voluntary departure to his native country, Pakistan, in the event he is paroled from state custody.  This admission suggests that Sardar is subject to removal upon his release from prison, so there would appear to be legitimate governmental concern in preventing Sardar from fleeing.

[4]  Effective March 1, 2003, the Immigration and Naturalization Service ("INS") ceased to exist as an agency of the Department of Justice, and its functions were transferred to the Department of Homeland Security ("DHS").  See Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002).  The Bureau of Immigration and Customs Enforcement ("ICE") of the DHS is responsible for the interior investigation and enforcement functions that formerly were performed by the INS.

Cir. 1999), <u>cert. denied</u>, 528 U.S. 1086 (2000).  Accordingly,

"the Equal Protection Clause requires only that the

classification rationally further a legitimate state interest."

<u>See</u> <u>Nordlinger v. Hahn</u>, 505 U.S. 1, 10 (1992).  Excluding

prisoners subject to detainers, non-permissible detainers, or

other custodial considerations from participation in programs

involving custody issues is rationally related to the state's

legitimate interest in preventing such prisoners from fleeing.

<u>See</u> <u>McLean v. Crabtree</u>, 173 F.3d at 1185-86.  Accordingly, the

defendants' action in denying plaintiff a reduced custody status

pursuant to policy and regulations regarding detainers and non-

permissible detainers does not violate either the Due Process

Clause or the Equal Protection Clause of the Fourteenth

Amendment.  The Complaint will be dismissed with prejudice for

failure to state a claim.

IV.  <u>CONCLUSION</u>

For the reasons set forth above, the Complaint will be

dismissed with prejudice for failure to state a claim, pursuant

to 28 U.S.C. § 1915(e)(2)(B)(ii) and 1915A(b)(1).  It does not

appear that Sardar could cure the defects in his pleading by

amendment.  An appropriate Order follows.

S/Freda L. Wolfson
FREDA L. WOLFSON
United States District Judge

Dated: June 21, 2006

12
